1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SHARON QUILL,

      Plaintiff,

      v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

      Defendant.

No.  2:13-CV-3097-JTR

ORDER GRANTING
DEFENDANT'S MOTION  FOR
SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF Nos.  18, 19.   Attorney D. James Tree represents Plaintiff, and Special Assistant United States Attorney Nicole A. Jabaily represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 8.  After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

On June 3, 2008, Plaintiff filed a Title II and a Title XVI application for disability and supplemental security income benefits, alleging disability beginning October 1, 1989.  Tr. 25; 263-64.  Plaintiff reported that she was unable to work due to manic depression and PTSD.  Tr. 268.  Plaintiff's claim was denied initially and on reconsideration, and she requested a hearing before an administrative law

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

judge (ALJ).  Tr. 102-192.

On February 15, 2011, ALJ Marie Palachuk held a hearing, at which medical expert Donna Mary Veraldi, Ph.D., vocational expert K. Diane Kramer and Plaintiff, who was represented by counsel, testified.  Tr. 59-100.  On March 25, 2011, the ALJ issued a decision finding Plaintiff not disabled.  Tr. 25-41.  The Appeals Council declined review.  Tr. 1-4.  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties and, thus, they are only briefly summarized here.  At the time of the third hearing, Plaintiff was 40 years old, and had one teenage daughter.  Tr. 102; 308-09.  As of September, 2008, Plaintiff was living with relatives.  Tr. 308.

Plaintiff completed the ninth grade of school, and later obtained a GED.  Tr. 76.  She worked at several short-term jobs, often as a cashier, at stores such as Wal-Mart and at Michael's Arts and Crafts.  Tr. 78; 254-59.  She also worked as a waitress and as a produce sorter.  Tr. 254-59.  She obtained a cosmetology license and worked as a hairdresser for a few months.  Tr. 79.

Plaintiff testified that she did not take street drugs, after her teen years.  Tr. 89.  But in October 2008, she told Jay M. Toews, Ph.D., that she has a "long history" of substance abuse.  Tr. 459.  Plaintiff also testified that at one time, she lied and claimed that she was using methamphetamine, so she could go to a rehabilitation facility and get away from her mother.  Tr. 89.

Plaintiff testified that she has had back problems since she was a teenager, and she experiences increased pain when she is under stress.  Tr. 92.   She described her daily routine as watching television, eating, and sometimes staying in bed all day.  Tr. 308.  Plaintiff indicated that she eats frozen meals, and she can perform "all chores," but if she is too depressed she will not do anything.  Tr. 310.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

She reported her hobbies as sewing, beading, walking, watching television and reading.  Tr. 312.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable construction of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).   The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales, 402 U.S. 389, 401 (1971).*  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a); see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  In steps one

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

If the individual succeeds in proving disability when there is evidence of drug and alcohol addiction (DAA), the Commissioner must then determine whether the DAA is material to the determination of disability. 20 C.F.R. §§ 404.1535 and 416.935. The ALJ must determine whether the claimant would be disabled if he or she stopped using alcohol or drugs. The Social Security Act bars payment of benefits when drug addiction and/or alcoholism is a contributing factor material to a disability claim. 42 U.S.C. §§ 423(d)(2)(C) and 1382(a)(3)(J); *Sousa v. Callahan*, 143 F. 3d 1240, 1245 (9th Cir. 1998). Plaintiff has the burden of showing that drug and alcohol addiction (DAA) is not a contributing factor material to disability. *Ball v. Massanari*, 254 F. 3d 817, 823 (9th Cir. 2001).

If evidence exists of DAA and the individual succeeds in proving disability, the Commissioner must determine whether the DAA is material to the determination of disability. 20 C.F.R. §§ 404.1535 and 416.935. If an ALJ finds that the claimant is not disabled, then the claimant is not entitled to benefits and there is no need to proceed with the analysis to determine whether substance abuse is a contributing factor material to disability. However, if the ALJ finds that the claimant is disabled, then the ALJ must proceed to determine if the claimant would

be disabled if he or she stopped using alcohol or drugs.

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity October 1, 1989, her application date. Tr. 28.  At step two, the ALJ found Plaintiff suffered from the severe impairments of major depressive disorder, anxiety disorder, and polysubstance (cocaine, methamphetamine, and alcohol) abuse disorder.  Tr. 28.  At step three, the ALJ found Plaintiff's impairments, including the substance abuse disorders, medically equal sections 12.04, 12.06 and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d) and 416.920(d).  Tr. 34.  The ALJ also found that if Plaintiff stopped the substance abuse, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore the claimant would continue to have a severe impairment or combination of impairments.  Tr. 34.  The ALJ concluded that if the "claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d) and 416.920(d))."  Tr. 35.

The ALJ next found that if Plaintiff stopped the substance use, she would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> She is able to understand, remember, and carry out simple routine and repetitive tasks involving up to 3-step commands.  She should have minimal contact with the public and only occasional superficial interactions with coworkers and supervisors.  It would be best if the claimant dealt with things rather than people; therefore, a more isolated work environment would be appropriate.  She would need additional time to adapt to changes in the work routine or work setting, and there may be occasions where she may need an additional 5 or 10 minute break during the workday.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

Tr. 36.  The ALJ also found that if Plaintiff stopped the substance use, she would be able to perform past relevant work as a sorter.  Tr. 40.   The ALJ concluded that because Plaintiff would not be disabled if she stopped the substance use, her substance use disorder is a contributing factor material to the determination of disability, and thus she is not disabled within the meaning of the Social Security Act.  Tr. 40.

## ISSUES

Plaintiff contends that the ALJ erred by: (1) finding Plaintiff had little credibility; (2) weighing the medical evidence; (3) positing an incomplete hypothetical to the vocational expert; and (4) failing to follow the requirements of SSR 13-2p.  ECF No. 18 at 9-10.

## 1.    Credibility

Plaintiff contends that the ALJ erred by improperly rejecting Plaintiff's credibility on the basis that the medical record did not adequately support her subjective statements.  ECF No. 18 at 14-15.

The ALJ is responsible for determining credibility.  *Andrews*, 53 F.3d at 1039.  Unless affirmative evidence exists indicating that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996).   The ALJ's findings must be supported by specific, cogent reasons.  *Rashad v. Sullivan,* 903 F.2d 1229, 1231 (9th Cir. 1990).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998), quoting *Lester*, 81 F.3d at 834.

The ALJ found that Plaintiff was not credible, based upon a lack of objective medical evidence to support the severity of her claimed symptoms, her inconsistent statements about substance abuse, and her sporadic work history prior to the alleged onset of her disabling conditions.  Tr. 38.  Plaintiff does not challenge the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

ALJ's findings regarding inconsistent statements and her sporadic work history prior to her alleged onset date. Instead, Plaintiff argues that medical evidence supports Plaintiff's claims, and specifically argues that medical records from Mr. Whiteshirt and Dr. Thompson support her credibility. ECF No. 18 at 14. Plaintiff's argument is cursory, and contains few citations to the record. ECF No. 18 at 14-15.[1]

Upon review of the record, Plaintiff's argument that the ALJ erred in determining Plaintiff lacked credibility is not persuasive. First, Plaintiff fails to specify the alleged records from "Whiteshirt, M.S.W." that support her argument. ECF No. 18 at 14. Nila Whiteshirt, M.S.W., completed multiple "WorkFirst Participation Verification Form[s]" indicating that Plaintiff attended, or failed to attend, workshops between April 2008 and January 2009. Tr. 644-59. However, Plaintiff failed to specify which opinions support her credibility. Also lacking is analysis related to records authored by Ms. Whiteshirt that provide objective medical evidence to support Plaintiff's claims of severe symptoms. The Ninth Circuit has repeatedly admonished that the court will not "manufacture arguments for an appellant and, therefore, will not consider claims that were not actually argued in appellant's opening brief." *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994). Because Plaintiff failed to provide meaningful analysis

---

[1]Plaintiff's argument also is devoid of relevant standards for determining credibility under the regulations, and instead cites to *Corpus Juris Secundum,* while urging the court to review the record regarding Plaintiff's credibility in "the light most favorable to the Claimant." ECF No. 18 at 15-16. We decline Plaintiff's invitation to employ a novel standard of review, and instead the court adheres to Ninth Circuit precedent that prohibits second-guessing of the ALJ credibility determination when the ALJ's findings are supported by substantial evidence. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

1    and argument, the court is unable to review this portion of Plaintiff's issue.[2]

2        The second prong of Plaintiff's argument relies upon a record she

3    erroneously attributes to "Thompson, M.D.," which is a brief questionnaire

4    completed by Thomas S. Walker, M.D.  Tr. 517.  The form, dated July 9, 2009,

5    reveals that Plaintiff was a new patient, and she was first seen by this doctor less

6    than four weeks earlier on June 12, 2009.  Tr. 517-18.  Dr. Walker indicated he had

7    seen Plaintiff twice, for abdominal pain related to gallstones.  Tr. 517.  In response

8    to the question, "does your patient have to lie down during the day?" Dr. Walker

9    responded "yes."  Tr. 517.  Dr. Walker answered that full time work would likely

10   cause Plaintiff's pain and depression to increase, yet Plaintiff was not likely to

11   miss work due to medical impairments.  Tr. 518.

12       Dr. Walker's brief answers on a single form do not provide objective

13   medical evidence that supports Plaintiff's assertions of the alleged severity of her

14   symptoms.  In the corresponding chart notes, Dr. Walker acknowledged that since

15   he had only seen Plaintiff twice for her abdominal pain which were gallstones, he

16   was "only able to provide limited info[rmation] for her long standing back pain."

17   Tr. 538.  As such, Dr. Walker's cursory answers on the July 9, 2009, form do not

18   provide objective medical evidence that supports Plaintiff's credibility.

19       Moreover, the ALJ provided valid reasons for finding Plaintiff's credibility

20   lacking.  Specifically, the ALJ relied upon the lack of objective medical evidence,

21   Plaintiff's inconsistent statements about her substance abuse, and her sporadic

22   work history prior to the alleged onset of her disabling conditions.  Tr. 38*; see*

23   *Morgan*, 169 F.3d at 600 (conflicts between a Plaintiff's testimony of subjective

24

25       [2]The ALJ gave little weight to Ms. Whiteshirt's opinion that Plaintiff was

26   unable to work more than ten hours per week because that assessment was

27   "admittedly based on the claimant's self-statements."  Tr. 39.  The record supports

28   this finding.  Tr. 652.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

complaints and the objective medical evidence in the record can constitute specific and substantial reasons that undermine credibility); *Thomas*, 278 F.3d at 959 (in finding claimant had little credibility, ALJ relied on claimant's inconsistent statements regarding drug and alcohol use and spotty work history prior to onset date); *Pearsall v. Massanari,* 274 F.3d 1211, 1218 (8th Cir. 2001) ("A lack of work history may indicate a lack of motivation instead of a lack of ability").

Moreover, the ALJ's valid reasons are supported by substantial evidence. For example, the evidence reveals that Plaintiff admitted she lied to her counselor in order to get admitted to a rehabilitation facility. Tr. 89. She also gave inconsistent answers about her abuse of drugs and alcohol. Tr. 459-60; 555. Several objective medical tests of Plaintiff's back revealed normal anatomy, and she exhibited normal gait, strength and sensation. Tr. 486, 520, 524, 718. Also, the record establishes that Plaintiff's work history was sporadic, prior to her onset date. Tr. 254-58; 275.

The ALJ provided clear and convincing reasons, supported by substantial evidence, in determining that Plaintiff's complaints had little credibility.

## 2.    Medical Evidence

Plaintiff argues that the ALJ erred by "dismissing the numerous 'moderate' functional limitations of the Claimant." ECF No. 18 at 16-17. Plaintiff states that Patricia Kraft, Ph.D., and non-examining medical expert Donna Veraldi, Ph.D., both assessed Plaintiff with several moderate functional limitations, and the ALJ erred by "dismissing" these assessments.

Again, Plaintiff's vague statement of the issue lacks meaningful argument. Plaintiff provides little more than a recitation of the number of moderate limitations assessed by two medical providers and the definition of "moderate" as it relates to the assessed impairments. In other words, Plaintiff fails to provide a basic legal analysis.

On review, a Mental Residual Functional Capacity Assessment was

completed on November 5, 2008, by Patricia Kraft, Ph.D.  Tr. 478-80.  Dr. Kraft assessed Plaintiff with six moderate limitations in the ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) work in coordination with or proximity to others without being distracted by them; (5) interact appropriately with the general public; and (6) accept instructions and respond appropriately to criticism from supervisors.  Tr. 477-78.

Dr. Kraft's assessed moderate limitations are incorporated into Plaintiff's RFC.  Compare, Tr. 478-80 and Tr. 36.  For example, Dr. Kraft indicated that Plaintiff would be moderately limited in understanding, remembering and carrying out detailed instructions, and the RFC provides that Plaintiff is limited to simple, routine and repetitive tasks.  Tr. 478; 36.  Similarly, Dr. Kraft opined that Plaintiff would be moderately limited in working near others, interacting with the public and supervisors, and the RFC limits Plaintiff to jobs that have little to no contact with coworkers and the public, is more isolated, and requires working with things, not people.  Tr. 478-80; 36.  Plaintiff fails to identify a moderate limitation assessed by Dr. Kraft that was not incorporated into Plaintiff's RFC.  The court finds none.

Similarly, the RFC incorporated Dr. Veraldi's assessed limitations.  During the hearing, Donna Veraldi, Ph.D., opined that if Plaintiff stopped substance abuse and consistently took medications and was treated, she would experience only moderate functional limitations.  Tr. 70-72.  The ALJ synthesized Dr. Veraldi's assessed limitations in a narrative form:

Q.     Okay.  So, if I were to place those limitations in a narrative form; trying to cover all the areas that you indicated had moderate limitations.  If I were to indicate that she would be able to understand, remember and follow simple, routine, repetitive type tasks involving up to three step commands that she would – have minimal contact with the general public and only superficial occasional contact with

coworkers and supervisors?

A.    I believe so.

Q.    That she would be best dealing with things rather than people?

A.    I believe so.

Q.    That she should be provided additional time to adapt to any changes in the work routine or work setting.

A.    I think that'd be [inaudible].

Q.    And that she may upon occasion need an additional break in the work day over and above the regular two breaks that people get every day.

A.    That to be [inaudible], yes.

Q.    Are there any other limitations along those lines that you could think of that might be appropriate?

A.    I don't think so.

Tr. 72-73.  The ALJ incorporated the limitations, as opined by Dr. Veraldi, into Plaintiff's RFC:

> If the claimant stopped substance use, the claimant would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She is able to understand, remember, and carry out simple routine and repetitive tasks involving up to 3-step commands.  She should have minimal contact with the public and only occasional superficial interactions with coworkers and supervisors.  It would be best if the claimant dealt with things rather than people; therefore, a more isolated work environment would be appropriate.  She would need additional time to adapt to changes in the work routine or work setting, and there may be occasions where she may need an additional 5 or 10 minute break during the workday.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

Tr. 36.

Because the ALJ incorporated the moderate limitations as opined by Dr. Kraft and Dr. Veraldi into Plaintiff's RFC, the Plaintiff failed to establish error.

**3.    Hypothetical**

Plaintiff also argues that the ALJ erred by failing to incorporate all of the limitations opined by Dr. Veraldi into the hypothetical posed to the vocational expert. ECF No. 18 at 10-13.

The hypothetical that ultimately served as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions of the particular claimant. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id.*  However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006).

An ALJ may synthesize and translate assessed limitations into an RFC assessment (and subsequently into a hypothetical to the vocational expert) without repeating each functional limitation verbatim in the RFC assessment or hypothetical.[3] *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (holding that  an ALJ's RFC assessment that a claimant could perform simple tasks adequately captured restrictions related to concentration, persistence, or pace, because the assessment was consistent with the medical evidence).

---

[3]The law contradicts Plaintiff's assertion: "This is why it is so important to present hypotheticals word for word from the medical expert and not get caught up in making up your own interpretations or demanding counsel to make up new interpretations so that they are 'vocationally relevant.'" ECF No. 20 at 4.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

Plaintiff argues that the ALJ failed to incorporate into the hypothetical Plaintiff's requirement of extra breaks as opined by Dr. Veraldi.  ECF No. 18 at 11.  During the hearing, Dr. Veraldi assessed Plaintiff with several "moderate" limitations.  Tr. 71-72.  The ALJ synthesized the limitations and in relevant part, articulated one of the limitations as:  "And that she may on occasion need an additional break in the work day over and above the regular two breaks that people get every day."  Tr. 73.  Dr. Veraldi affirmed that summary.  Tr. 73.

Next, the ALJ posed several questions to the vocational expert, Diane Kramer, to determine if Plaintiff could perform her prior work.  In particular, the ALJ asked Ms. Kramer to assume a hypothetical worker that included the limitations:

> Q.    … Additional time would be needed to adapt to changes in the work routine or work setting, and there may be occasions where the individual would need an additional break during the day to just kind of get away from the work setting. …

> A.    Where I'm stumped is trying to sort out the last two additional time to adapt to changes, and then break over and above the normal breaks.  I feel that she could do the position of sorter.  That would fall within all the rest of the hypothetical.  Additional time to – really, it's the same thing over and over again, so they really don't – that wouldn't fall into consideration.

> Q.    But, what you're saying, because you didn't finish your sentence.  You're referring to the additional time to adapt to change stipulation?

> A.    Yes.

> Q.    Okay.

> A.    I'm sorry.  So that wouldn't be an issue, but the issue of additional break; the – wow.  If the individual could use that break as on a lunch time, that could be factored in.  I don't know if, you know,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

it might come down to specific accommodations.  What I'm thinking about, if an individual worked on a sorting line and they got their two breaks; mid-morning and midafternoon instead of taking say like for example, a ten minute break, if they took a five minute break and then we're able to factor that in throughout another time; that might be accommodated.  If, you know, that was worked out with the line supervisors.  So, I'm having a hard time.

Q.     So, if they had, let's say, one day during the week where they just felt like a need to get away, and asked can I go to the bathroom for five minutes; would that be some sort of a special accommodation that would need to be accommodated?

A.     Not really.  I've seen that happen.  No, not really.  I've seen that happen and I've experienced that.

Q.     Okay.  That's the type [of] thing I am referring to.  If they just felt like they needed –

…

[examination of vocational expert by claimant's attorney]

Q.     … if the break could be something like a lunchtime, or somebody could excuse themself  [sic] to a bathroom break; so you said just on a once a week basis, then it could be accommodated fine?

A.     Yes.

Q.     Okay.  And then, Ms. Kramer, this was something that was more than just like a once a week thing, but irregular times; could happen at any time.  Would that be something that an individual could maintain competitive employment?

A.     Well.  I would think after a while that no, that an individual would be written up for taking too many breaks, and most likely it would lead to termination.

Tr. 96-99.  Plaintiff charges that the ALJ "distorts the testimony of ME Veraldi,

whose testimony implies that those additional breaks for [Plaintiff] were not merely a possibility, but a probability," and "those additional breaks, taken on a daily basis," meant Plaintiff could not sustain employment.  ECF No. 18 at 12. Plaintiff provides no citation to the record to support this charge.  Upon review, the court arrives at the opposite conclusion.

Dr. Veraldi agreed with the ALJ's summary of the limitation "And that she *may upon occasion* need an additional break in the work day."  Tr. 73 (emphasis added).  Plaintiff's attempt to equate the equivocal "may," qualifier with the inevitable "will," is simply not supported by the record.  Equally doomed is Plaintiff's attempt to equate the sporadic possibility of "upon occasion," with the consistent routine of "daily."  Contrary to Plaintiff's contention, Dr. Veraldi did not opine that Plaintiff would require daily, additional breaks from work.  Thus, the hypothetical was sufficient, and Plaintiff's argument fails.

**4.    SSR 13-2p**

Plaintiff argues that the ALJ erred by failing to follow SSR 13-2p.  ECF No. 18 at 17.  Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

In this case, as the Defendant points out, SSR 13-2p became effective March 22, 2013, and, thus was not available for the ALJ to consult in 2011.  78 Fed. Reg. 11939 (2013).  As a result, Plaintiff's contention that the ALJ committed reversible error by failing to follow SSR 13-2p fails.

Moreover, Plaintiff misunderstands the process set forth in SSR 13-2p. Plaintiff argues that because the record does not clearly delineate a period of abstinence from drugs and alcohol, the ALJ erred by "simply assum[ing] that if Plaintiff stopped all substance abuse, she would be able to work."  ECF No. 18 at

19-20.

Plaintiff has the burden of proving disability throughout the sequential evaluation process and establishing a period of abstinence is not necessary:

> it is our longstanding policy that the claimant continues to have the burden of proving disability throughout the DAA materiality analysis. There does not have to be evidence from a period of abstinence for the claimant to meet his or her burden of proving disability.

SSR 13-2p at 5.  Additionally, the determination of materiality – that is, whether Plaintiff's use of drugs and alcohol materially contributes to her alleged disability - - is an issue specially reserved to the Commissioner.  SSR 13-2p at n.19.  As such, Plaintiff's contention that the ALJ incorrectly analyzed the DAA determination because no evidence exists of a period of abstinence is not well taken.  This issue fails.

## CONCLUSION

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly,

**IT IS ORDERED**:

1.    Defendant's Motion for Summary Judgment, **ECF No. 19,** is **GRANTED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 18,** is **DENIED**.

The District Court Executive is directed to file this Order, provide copies to the parties, enter judgment in favor of Defendant, and **CLOSE** this file.

DATED July 22, 2014.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16